[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action for dissolution of marriage and other relief brought to the judicial district of Danbury. Many of the facts that give rise to this action are not in dispute. The plaintiff and the defendant, whose maiden name is Pamela A. McDonough, were married on October 1, 1988, at New Canaan, Connecticut. The plaintiff has resided continuously in the State of Connecticut for at least one year immediately prior to the date that the complaint was filed. The marriage between the parties has broken down irretrievably without any reasonable prospects of reconciliation. There is one minor child issue of this marriage, Brian Patrick Harrick, born August 31, 1995. No other minor children have been born to the defendant wife since CT Page 3280 the date of marriage of the parties. Neither party receives state assistance.
From the evidence presented, the court finds that each party is equally at fault for the breakdown of the marriage.
The plaintiff is forty-three years old. He attended high school and is one-half credit short of receiving his high school diploma. He has also taken some night courses in computer and Spanish. His health is fine.
The plaintiff's financial affidavit dated March 19, 1998, shows gross weekly income of $1182 and net weekly income of $1126 based on his 1996 income tax return. The plaintiff's 1996 income tax return shows total business income of $16,298. The plaintiff's 1996 income tax return shows net profit from the paving business of $15,974 and net profit from his oil business of $324. In arriving at his gross weekly income for the purposes of his financial affidavit, he added back into his income the depreciation from his paving business of $40,960 plus the depreciation from his oil business of $4218 for a total combined net profit from the two businesses of $61,476, which when divided by fifty-two amounts to $1182 weekly income. The question on how to treat depreciation is one that lies within the discretion of the court. The plaintiff is to be commended for agreeing that depreciation should be added back in for the purposes of determining his net weekly income. The financial orders hereinafter entered are based in part on the plaintiff having gross weekly income of $1182 less deductions. The plaintiff owns business equipment with a total value of $195,000. He has debts that are owed on the equipment totaling $110,000 for an equity in the equipment of $85,000. One of the liabilities that the defendant has on the equipment he owns is to Case Credit with a balance due of approximately $72,000. He is not current in all of his payments on the various loans on his equipment. He is behind approximately three months in making payments on the oil truck and is approximately three months behind in payments on paving equipment. He has approximately $15,000 in his oil company checking account that is not shown on his financial affidavit that is earmarked towards paying the February, 1998 oil bill of $10,528.39 together with the payment for oil delivered in March of 1998 of approximately $4000.
The plaintiff's financial affidavit shows that he has accounts receivables over ninety days old. The total amount of CT Page 3281 the accounts receivable is approximately $9000 and, probably, none of them are collectable.
The plaintiff has the following liabilities: (a) Southern New England Telephone Company — $1,184.06; (b) ATT — $123.18; (c) Citicorp. — $2,335.94, which includes $258.96 in late charges; (d) Lafayette American Bank — $12,866.59; (e) Allstate Equipment — $1,061.23; (f) Egan's Auto Care — $846.24; (g) City of Norwalk Department of Public Utilities — $369; (h) Pat's Sales and Service, Inc. — $534.96; (i) Devine Brothers, Inc. — $710.30; (j) Chariott — $725; (k) Tilcon — $938.99; (l) William W. French — $551.20; (m) American Marketing Services — $700; (n) Fire Out — $31.80; (o) American Express Travel — $5,506.43; (p) CLP — $70.25; (q) Bonaddio Trucking — $395; (r) Commercial Tire and Recapping, Inc. — $909.60; (s) Pierson and Smith, Inc. — $100; (t) City of Norwalk tax bill — $439.14; (u) City of Norwalk tax bill — $245.06; (v) City of Norwalk tax bill — $320.25; (w) O G Industries, Inc. — $16.31; (x) O G Industries, Inc. — $126.46; (y) Connecticut Telephone — $93.33; (z) Connecticut Telephone — $242.56; (aa) SNET — $27.21; (bb) ATT — $125.36; (cc) State of Connecticut Department of Motor Vehicles — $581.50; (dd) State of Connecticut Department of Motor Vehicles — $361.20; (ee) State of Connecticut Department of Motor Vehicles — $115; and (ff) Inland Fuel Terminals, Inc. — $10,528.39. The liability for Inland Fuel Terminals, Inc. is for deliveries made during the month of February, 1998. In addition to that unpaid balance, he also owes for fuel delivered in March of 1998, totaling approximately $4000.
The plaintiff's financial affidavit shows that he has $1600 in the Norwalk Municipal Credit Union. In addition to that, he has a deficit balance regarding the paving company account of approximately $235.
The plaintiff has been a paving and excavation contractor since 1975.
The plaintiff also has his own fuel oil business. The fuel oil business started in late 1990, or early 1991.
The plaintiff obtained title to the family home in his own name by deed dated December 29, 1986. The purchase price was $143,500. The purchase price was financed in part with a first mortgage of $107,600 with the balance being paid by the plaintiff from his own savings. The plaintiff transferred the property ito his name and that of the defendant in survivorship by deed dated CT Page 3282 June 6, 1989. Title was obtained approximately two years before the parties married. The defendant claims that she contributed to the acquisition of the property during the period of time that the parties were dating by paying many of the expenses of dating for the purpose of allowing him to save money to buy property. The court finds that that claim is not credible. The court finds at the present time the fair market value of the family home is $140,000 and that it has a mortgage balance of $93,000 and an equity of $47,000.
There is an attachment on the family home in the amount of $11,250 in favor of Temple Israel dated December 17, 1987. There is a judgment lien on the family home in favor of Dr. William Glazer in the amount of $600 recorded on June 28, 1993. There is a judgment lien on the family home in favor of the tax collector of the town of Newtown in the principle amount of $11.84 recorded June 15, 1992. There is another judgment lien on the family home in favor of the town of Newtown in the amount of $2,182.54 recorded June 15, 1992. There is a judgment lien on the family home in favor of Royal Indemnity in the amount of $661 recorded July 25, 1998. There is a judgment lien on the family home in favor of Allstate Insurance Company in the amount of $4289 plus costs recorded on October 16, 1992. The total face amount of the above liens on the family home, other than the first mortgage, totals $18,994.38.
The defendant has an earning capacity of approximately $400 net weekly income. She was previously employed by United Technology Division for approximately eleven years. She has a 401K plan that was accumulated during the time she worked at United Technology between approximately 1983 and 1994. The value of that 401K plan is approximately $10,000. The defendant has a term life insurance policy in the face amount of $250,000 with no cash surrender value. The defendant has a liability to Bridgeport Hospital of $400 and a liability to Norwalk Hospital of $700, both of which were incurred in connection with the birth of the minor child. Although not shown on her financial affidavit, the defendant has approximately $2000 in savings bonds that she intends to use towards paying her attorney's fee.
The parties are in agreement that an order of joint custody should enter with primary residence of the minor child with the defendant mother.
The issue of visitation was referred to Family Services for CT Page 3283 the limited purpose of mediation. The report back date is May 18, 1998. When this trial began, the parties were not in agreement as to what the visitation order should be. The court does not feel, in view of the limited amount of time that has been spent on the issue of visitation, that the court has totally focused on the issue of visitation and, therefore, it will not be necessary for either party to show a substantial change in circumstances if either party seeks to modify the visitation order hereinafter entered.
The plaintiff's net weekly income for the purpose of entering support orders is $1086 regardless of whether he has one exemption for himself only, or two exemptions for himself and the minor child. The amount of support called for under the guidelines for him to pay to the defendant is $229 weekly.
Pendente lite orders were entered in this matter on February 3, 1998. Those orders included the plaintiff being responsible for paying the mortgage on the marital residence. He is behind in those payments.
The court has considered the provisions of § 46b-82
regarding the issue of alimony, and has considered the provisions of § 46b-81 (c) regarding the issue of property division, and has considered the provisions of § 46b-56 and § 46b-56a
regarding the issues of joint custody, custody and visitation, and has considered the provisions of § 46b-84 and the child support guidelines regarding the issue of support, and has considered the provisions of § 46b-62 regarding the issue of attorney's fees. The court enters the following orders.
ORDERS
A. BY WAY OF DISSOLUTION
1. The marriage between the parties is dissolved and each party is declared to be single and unmarried.
B. BY WAY OF ALIMONY
1. The plaintiff is ordered to pay to the defendant alimony in the sum of $200 per week. Alimony is nonmodifiable as to term. Alimony shall terminate upon the earliest of the following events: (a) the death of the plaintiff; (b) the death of the defendant; (c) the defendant's remarriage; (d) September 1, 2001. CT Page 3284 The court finds that the minor child will enter first grade as of September 1, 2001, which will reduce the defendant's need for alimony as she will not be required to have the day care costs that she will be required up to that time in the event she obtains full time employment. Alimony may not be decreased as a result of the defendant having net weekly earnings that do not exceed $400. Alimony may not be increased as a result of the plaintiff having increased net weekly earnings that do not exceed $1486. This restriction on the increase or decrease of alimony does not apply to an increase or decrease in child support.
2. Except as provided above, the provisions of § 46b-86
(a) are applicable.
3. The provisions of § 46b-86 (b) are also applicable.
C. BY WAY OF CUSTODY AND VISITATION
1. The court orders that the parties have joint custody of the minor child with the primary physical residence of the minor child to be with the defendant.
2. The plaintiff is granted reasonable, liberal and flexible rights of visitation which shall include each Tuesday and Thursday from 5 p. m. to 7 p. m., and Sunday from 9 a.m. to 5 p. m.
3. After the Family Services mediation report back date of May 18, 1998, the parties are to confer and attempt to come to an agreement regarding extending the weekend visitation hours.
4. The parties shall alternate the major holidays. The child shall spend Christmas Eve through 11 a.m. on Christmas Day with one parent and from 11 a.m. until 6 p. m. with the other parent. This schedule shall be alternated annually and takes precedence over all other visitation schedules.
5. The plaintiff shall be entitled to one week of exclusive vacation time with the child per year. Said week shall not interfere with the child's school schedule.
6. The child shall spend Mother's Day with the defendant and Father's Day with the plaintiff. This paragraph takes priority over the general visitation schedule.
7. The parties shall share the child's birthday and this CT Page 3285 provision shall take priority over the general visitation schedule.
8. The defendant shall give the plaintiff not less than ninety days written notification of any intention on her part to relocate the child more than thirty miles from her present location in Newtown, Connecticut.
D. BY WAY OF SUPPORT
1. The plaintiff is ordered to pay to the defendant support in the amount of $229 weekly, which is in accordance with the child support guidelines.
2. The plaintiff and the defendant shall equally be required to maintain the present medical insurance which the defendant has under COBRA through her prior employment. All unreimbursed medical, dental, optical, orthodontic, psychological and prescriptive drug expenses incurred on behalf of the minor child shall be shared equally by the parties. Any unreimbursed medical expenses incurred by the plaintiff or the defendant shall be their respective responsibilities.
3. The plaintiff shall have the right to claim the minor child as an exemption for each calendar year in which he is current in both his alimony and support payments at the end of such calendar year. This provision is subject to modification in the event the defendant can show that such exemption would be of benefit to her as a result of income from her employment. It would then be left to the discretion of the court as to what modification, if any, should be entered regarding claiming the child as an exemption. In the event the defendant becomes employed and is disqualified from claiming the Earned Income Tax Credit because the plaintiff is claiming the minor child as a dependent for tax purposes, then in such event, the defendant shall have the right to claim the minor child as a dependent on her federal and/or state income tax returns.
E. BY WAY OF PROPERTY ORDERS
1. The plaintiff is ordered to quitclaim to the defendant all of his right, title and interest to the family home located at 25 Plumtree Road, Newtown, Connecticut. The deed is to be delivered within thirty days from the date this decision is filed to the office of counsel for the defendant. The defendant is to pay the CT Page 3286 first mortgage and hold the plaintiff harmless therefrom. The defendant is to retain all of the household furniture and furnishings and jewelry in the family home that are in her possession.
2. The plaintiff is to retain ownership of the Glastron boat which has a fair market value of $2000.
3. The defendant is to retain the Fleet checking account shown on her financial affidavit, as well as the $2000 in stocks and bonds that are not shown on her affidavit.
4. The plaintiff is to retain the checking account on his financial affidavit, as well as the business checking accounts that are not shown on his financial affidavit.
5. The defendant is to retain the 401K plan with a value of $10,000 and the IRA with a value of $590 shown on her financial affidavit, as well as the child's college fund and savings with a value of $1300.
6. All business equipment owned by the plaintiff is awarded to the plaintiff. He is to hold the defendant harmless from any debts regarding that equipment
7. The plaintiff is ordered to pay to the defendant 30 percent of the gross amounts that he collects regarding the existing accounts receivables for both of his businesses.
8. The 1989 Buick shown on the defendant's financial affidavit with a value of $6000 is awarded to the defendant.
9. The plaintiff is to pay all the liabilities shown on his financial affidavit, as well as all of the liens on the family home, except for the first mortgage, and hold the defendant harmless. He is also to pay the Bridgeport Hospital and Norwalk Hospital liabilities shown on the defendant's financial affidavit and hold the defendant harmless. He is also to pay all the liabilities referred to on pages three and four of this decision and hold the defendant harmless. The plaintiff is responsible for satisfying and/or releasing all of the liens on the family residence within three years from the date this decision is filed, other than for the first mortgage. Within six months after the plaintiff has arranged for all of the liens on the family residence to be satisfied or released and has notified the CT Page 3287 defendant in writing of the same, the defendant shall make reasonable efforts to refinance the mortgage so as to release the plaintiff from liability under the mortgage. Such refinancing does not have to be at an interest rate greater than what the interest rate presently is on the mortgage. Any points that are required as part of such refinancing, not to exceed two points, are to be divided equally between the parties.
F. BY WAY OF ATTORNEY'S FEES
1. No attorney's fees are awarded in favor of either party.
G. PENDENTE LITE ORDERS
1. All pendente lite orders remain in effect until the date this decision is filed. Any arrearages are not merged into the judgment and survive the judgment. In the event the parties are unable to agree as to the amount of such arrearages, if any, and how they are to be repaid, then they will have to file a short calendar motion for that purpose.
H. MISCELLANEOUS ORDERS
1. Counsel for the plaintiff is to prepare the judgment file within thirty days and forward it to counsel for the defendant for signature and filing.
2. The parties are to exchange copies of their federal and state income tax returns by certified mail, return receipt or registered mail, return receipt within fifteen days after such returns have been filed for so long as there is any outstanding alimony and/or support order or any outstanding arrearage from any such order.
Axelrod, J.